## BUESCHER v ELLENBERGER

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17829.  Decided Nov. 18, 1940.

Hurt, Stephenson & Celeste, Cleveland, for plaintiff-appellee.

Joseph Carmosino, Cleveland, for defendant-appellant.

## OPINION

By MORGAN, J.

The plaintiff in this case filed his action in the Court of Common Pleas to recover damages for injuries caused him and his automobile in a collision with the defendant's truck, on Route 14 between Bedford and Twinsburg. The plaintiff recovered a substantial verdict below. The defendant appealed and assigned nine separate grounds of error. In the view that we take of the case it is necessary only to consider the third specification of error, namely, that the trial court erred in overruling the defendant's motion for a directed verdict at the close of all the evidence.

The evidence discloses that the defendant on the afternoon of November 18, 1936, purchased for trial a Studebaker truck tractor in Cleveland. The defendant driving the Studebaker truck left a garage located on Carnegie Avenue at East 70th Street in Cleveland proceeding south toward Hiram and had reached a point on Route 14 south of Bedford when the motor of the truck stopped, due to a broken gas line. It was then six o'clock, or a few minutes after, and it was dark. The defendant got out of the truck and in lifting the

hood the lights on the truck went out and he was unable to re-light them. The defendant re-entered the truck and by use of the starter, operated it over to and along side the westerly curb of the roadway. The defendant then walked back to a gas station a few hundred feet in the rear, and according to the evidence of the operator of the gas station, defendant sought to get a lantern. Not having a lantern the gas station operator sold him some kerosene and gave him a newspaper. Defendant informed the operator of the gas station that he was having some trouble with his tractor and that he desired to put out some flares. The gas station operator testified that he heard the noise of a collision shortly after the defendant left the gas station with the kerosene and the newspaper.

The defendant testified that he had returned to a point about twenty-five feet back of his Studebaker truck and was proceeding to light a flare by using the newspaper and the kerosene. Before he was able to make a light the plaintiff's car approached from the north in the same lane as the Studebaker truck, at the rate of about sixty miles per hour. Before reaching the truck, the plaintiff attempted to turn his car to the left but was unable to clear the truck and the right side of plaintiff's car collided with the truck and continued across the roadway to the east curb.

Route 14 at the place of the collision is thirty feet wide and the evidence that plaintiff's car continued across the highway after the collision and came to rest at the east curb is not contradicted.

The plaintiff testified that before the collision he was driving south on Route 14 at thirty-five miles per hour, with the left wheels of his car just to the left of the center line of the roadway; that he saw a car some distance ahead bound north which seemed to be coming directly at him; that when the on-coming car was about one hundred feet away, the plaintiff in order to avoid it turned his car sharply to the right and as he did so his forward lights for the first time showed up the Studebaker truck which was parked along the west curb without lights. That his car was about thirty to forty feet away from the Studebaker truck when he first saw it and when he turned sharply to the right to avoid the on-coming car.

The plaintiff also testified that he was using his bright lights and that he had the reflectors resilvered within a year of this accident. There was evidence that he had also had some repairs made on the car within a month but there was no evidence that any repairs had been made to the lights or that they had been checked at that time.

On cross-examination, the plaintiff was asked as to the condition of the lights on his car. He testified that he could see objects one hundred (100) feet ahead the width of the car. He further testified that one hundred and fifty feet (150) ahead would be the maximum that he could see an object and that at that distance the objects would not be very clear. When asked for his reason for not seeing the truck before he had reached a point thirty or forty feet away, plaintiff answered, "because it was out of the vision of my lights."

Sec. 6310-1 GC requires that plaintiff's car on the evening of the collision should have been provided with lights which would "throw sufficient light ahead to show any person, vehicle or substantial object upon the roadway straight ahead of the motor vehicle for a distance of at least 200 feet." Plaintiff's failure to provide lights complying with this statutory requirement was negligence per se.

Kormos v Credit Men's Co., 131 Oh St 471.

The driver of the on-coming car, which the plaintiff said caused him to turn to the right immediately before the collision, was called as a witness by the plaintiff.

His evidence as to how the collision occurred was quite different from the plaintiff's story. He testified that he was proceeding north on Route 14 on his own side of the road and that he passed the plaintiff's car before the col-

lision. He looked into the mirror of his car and saw the collision to his rear. After the collision, he testified that plaintiff's car "shot across the left side of the road where I had been."

A photograph was introduced in evidence by the plaintiff, showing the condition of the front of plaintiff's car after the collision. This photograph shows that the right headlight and right fender of plaintiff's car were smashed but the left headlight and the left fender were virtually unharmed. This fact, coupled with the conceded fact that plaintiff's car continued across the roadway after the collision, shows that plaintiff's car at the time of the collision was headed in a southeasterly direction.

Plaintiff's evidence is that when he was thirty to forty feet away from the Studebaker truck and going 35 miles per hour he turned sharply to the right or to the southwest in order to avoid an approaching car. A driver going 35 miles per hour covers fifty-one feet in one second. Accordingly it is evident that on the basis of the plaintiff's evidence, the collision occurred within one second or less after he turned his car sharply to the right, that is to the west, to avoid the approaching car. Although the plaintiff testified that on seeing the Studebaker truck ahead of him he then applied his brakes and attempted to turn his car to the left, it was physically impossible for him, after turning his car sharply to the right to avoid an on-coming car, within one second or less, to turn his car going 35 miles per hour to the left, that is to the east, so that at the time of the collosion he would be proceeding in a southeasterly direction. In other words, it is impossible to harmonize plaintiff's evidence as to how this collision occurred with the condition of the front of his car after the collision, as shown by the photograph of the front of his car, introduced by him in evidence in this case.

But giving the plaintiff's evidence full credence and the benefit of every doubt, it is still our opinion that he has not made out a case.

While the requirement of §6310-1 GC is that the lights on plaintiff's car should have been sufficient to show another vehicle "straight ahead" for a distance of at least 200 feet, it is obvious that lights of such strength would have disclosed to plaintiff another vehicle parked, as was defendant's truck, along the west curb ten feet from the center line of the roadway. This would have been increasingly true as the distance between the plaintiff's car and defendant's truck was lessened. Lights that would have revealed to the plaintiff a vehicle "straight ahead" at 200 feet away, at 150 or 100 feet undoubtedly would have brought within plaintiff's vision a vehicle in the position of the defendant's truck.

There was no evidence that anything obstructed the plaintiff's view of the on-coming car or that plaintiff was confused by its headlights. It was stipulated by counsel at the trial that a car traveling 35 miles per hour with four-wheel brakes with which plaintiff's car was equipped, after allowing for reaction time, could be brought to a stop in sixty-eight (68) feet. It is clear to us that if the plaintiff's car had been supplied with headlights complying with the statute the plaintiff in the exercise of ordinary care, upon observing the on-coming car, would have seen defendant's parked truck in sufficient time to have brought his car to a stop within "the assured clear distance ahead" as required by §12603 GC.

In view of plaintiff's own evidence that the headlights on his car did not comply with the requirements of the statute, and that he did not see defendant's truck until he had reached a point thirty to forty feet from the truck, we consider the conclusion inevitable that plaintiff was guilty of negligence per se and that his negligence was a contributory cause of the collision.

Plaintiff contended that his evidence in this case, if accepted, brings the case within the exception of the third syllabus of Kormos v Credit Men's Company, supra, and of the decision in

Matz v Curtiss Cartage Co., 132 Oh St 272.

The distinction between the present case and Matz v Curtiss Cartage Company is clear. In the latter case plaintiff testified and the jury had the right to believe "that his bright headlights illuminated the road about 250 feet ahead and lighted it up from the center to the south curb." It also appeared from the evidence in that case that plaintiff was confronted with an emergency when one of two automobiles coming toward him, when only twenty to twenty-five feet away, suddenly swerved into his path and forced him "to turn suddenly and unexpectedly to the right to avoid a head-on collision with this car."

In the case under consideration there is no evidence that the on-coming car of which plaintiff had an unobstructed view for a considerable distance, changed its direction or "suddenly and unexpectedly" swerved into plaintiff's path. An important consideration in this case, namely, plaintiff's admission of failure to have headlights complying with statutory requirements, was wholly absent from Matz v Curtiss Cartage Company, supra.

Plaintiff in this case, therefore, cannot be said to have met the requirement of the third syllabus of Kormos v Credit Men's Company, supra, that

"3. An operator who has failed to comply with the "assured clear distance" statute may excuse such failure and avoid the legal imputation of negligence per se by establishing that without his fault and because of circumstances over which he had no control, compliance with the law was rendered impossible."

We reach this result, if plaintiff's evidence is accepted without reserve. As already shown, plaintiff's evidence is contradicted not only by the defendant but also by the evidence of the driver of the north-bound car and by the uncontradicted physical facts.

There is also in this case the question of the defendant's negligence. It certainly was not his fault that there was a break in the gas line of the truck purchased for trial by him the same day, while traveling to his home in Hiram, Ohio. It was not his fault that the lights went out. Afterwards he did what he should have done, namely, with the use of the starter he drove the truck against the west curb and then went to a gas station to get a light. He returned to his truck and before he was able to apply the kerosene and light a newspaper the collision occurred.

The plaintiff contends that the defendant was negligent in not moving his truck off the highway the distance of a few hundred feet to the gas station. The only evidence on this point in the record is found in the cross-examination of the defendant. He was asked whether or not "he could have propelled the truck to the gas station which was less than 500 feet away." Defendant's answer was "No, sir, the battery would not have stood up that far." The plaintiff on rebuttal did not introduce any evidence to contradict this statement.

Accordingly, the only evidence in the record is to the effect that it would have been impossible for the defendant to have moved his truck off the road after the gas line broke and before the collision.

All these undisputed facts indicate clearly that no injustice is being done the plaintiff by the decision of this court in this case. Our reversal, however, is placed on the ground that as a matter of law the plaintiff was guilty in this case of negligence which contributed to the collision and therefore bars recovery.

Therefore, the judgment of the court of common pleas is reversed for the reasons above stated, and final judgment is entered for the defendant-appellant herein. Exceptions may be noted.

TERRELL, PJ. & LEIGHLEY, J., concur.